THE INHABITANTS OF CUMBERLAND, *plfs. in error,* vs. THE INHABITANTS OF NORTH-YARMOUTH.

A submission, once made a rule of court, is no longer countermandable by either party.

Reports of referees, whether made under a rule of court, or under a submission before a justice, pursuant to the statute, may be recommitted by the court at their discretion, as well for the revision of the whole case, as for the amendment of matters of form.

After the recommitment of a report, it is not competent for two of the referees, in the absence of the third, to revise the essential merits of the case.

After referees have once undertaken the execution of the trust confided to them, and their report is recommitted, if they or one of them should refuse to re examine the subject, the court may enforce obedience to the order of recommitment, by *mandamus,* or attachment.

ERROR to reverse a judgment of this court, rendered at *November* term 1824, upon a report of referees. The original action was *assumpsit,* brought by the town of North-Yarmouth, to recover the sum of 1975 dollars, awarded by commissioners appointed by the special statute of 1821, *ch.* 78, *sec.* 9, dividing that town, and incorporating the town of Cumberland. At *November* term 1823, the suit was referred by rule of court, to the same commissioners, viz. *Nathan Elden, John Perley,* and *Ebenezer D. Robinson,* Esquires, with power also to consider other claims and demands subsisting between the two towns. The report of the referees, being made at *May* term 1824, in favor of *North-Yarmouth,* for $918.11, was contested on the merits, and recommitted. At *November* term 1824, another report was made by *Perley* and *Robinson,* two of the referees ; in which they stated that Mr. *Elden,* the chairman, having refused to notify either the par-

ties or the other referees, or to fix any time or place for the meeting ; they, the other two referees, had appointed a time and place for a further hearing, of which they had given notice both to the parties, and to the other referee ;—that the agents of *North-Yarmouth* attended ; but after some time had elapsed the attorney for Cumberland informed them that the inhabitants of that town would not appear ;—that thereupon the agents of *North-Yarmouth* stated that they would not offer any further evidence, nor again argue the cause ; but would submit it on the evidence already before them, requesting that the referees would take it into consideration, and make such report as the justice of the case might require ;—that thereupon, in the absence of Mr. *Elden*, who did not attend at this sitting, they carefully examined all the evidence in the case, and maturely weighed the same, and the allegations of the parties previously made ; and awarded that North-Yarmouth should recover of Cumberland $1622,95, including interest, with costs of court ; and $126,47 for the former costs of reference, and the further sum of $27,32 for costs of this last hearing. In the former report, made by all the referees, it was awarded that fifty dollars of the costs of reference should be paid by North-Yarmouth.

The latter report, made at *November* term 1824, was accepted by the Chief Justice, and judgment rendered thereon ; which the town of Cumberland sought to reverse.

The errors assigned were, in substance, that the court had recommitted the report, after all the referees had expressed their opinion ;—that it did not appear for what reason it was recommitted ;—that it did appear that two of the referees had usurped the right to regulate the time and place of meeting, before the chairman had an opportunity of declining the office of referee in open court ; and that in his absence, they had undertaken to revise the essential merits of the case, and make a new report, different from the former ; and this, after their jurisdiction was expressly denied by the town of Cumberland ;—and that it did not appear that the chairman refused the office of referee ; but only that he declined to give notice and meet them at that particular time.

Cumberland v. North-Yarmouth.

*N. Emery* and *Greenleaf* argued for the plaintiffs in error. 1. The jurisdiction of two of the referees over the merits of the case was expressly denied by the plaintiffs in error ; and this, *quoad hoc*, was a revocation of their authority. There is no submission, either at law or in equity, which is not revocable. *3 Vin. Abr. 131. Arbitrement II. a. pl. 2. I. a. pl.* 18 *Milne v. Gratrix* 7 *East* 608. *Vynior's case* 8 *Co.* 81. *Skinner v. Dayton* 19 *Johns.* 538. And it is not necessary that the revocation should be by deed. The marriage of a woman who was one of two defendants was held a revocation as to both. *3. Vin. Abr.* 434. *Authority I. pl.* 4. So where one had judgment in ejectment, and submitted the matter, and then sued out execution; this was held a revocation. *Green v. Taylor T. Jones* 134. And if the party may not revoke his consent before the referees proceed to act, yet he may refuse them the power to act again.

2. The error alleged in the original report was matter of substance ; yet the court recommitted it generally, without the defendant's consent. *Snyder v. Hoffman* 1 *Bin.* 43. *Shaw v. Pearce* 4 *Bin.* 485. But an arbitrator cannot, after award made, exercise a new and distinct act of judgment, without consent of the parties. It is a power which the court cannot confer. *Henfree v. Bromley* 6 *East* 309. He cannot even correct an error of calculation ; *Irvine v. Elnon* 8 *East* 54 ; nor explain doubtful matter ; *Eveleth v. Chase* 17 *Mass.* 458; nor correct a mistake ; *Scott v. Wray* 1 *Chan. Rep.* 45. *Caldw. on Arb.* 173. *Woodbury v. Northey* 3 *Greenl.* 85. The power of the court is derived wholly from the consent of the parties, and extends no farther. Even the arbitrators themselves cannot reserve the power of judging again. *Winch v. Saunders Cro. Jac.* 584. Nor can they delegate their authority, even to one of their own number ; as, to award that one party should make such a release as one of the arbitrators should approve. *3 Vin. Abr.* 65 *Arbitr. H.* 15.

3. But if the court have authority, generally, to recommit a report, against the will of a party, who may have invincible objections to a referee ; then referees are placed on the footing of jurors ; and what will disqualify the one, ought to be sufficient to set aside the other. *Williams v. Craig* 1 *Dal.* 315. Now here

the two arbitrators had already formed and expressed an opinion on the whole case; and therefore were unfit to try it again, without consent of both parties.

4. The award is bad, because made by two of the referees, who, in the absence of the third, assumed to revise the merits of the case. All must hear the parties; and deliberate on the merits; for the arguments of the dissenting referee might have an influence on the judgment of the others. *Short v. Pratt* 6 *Mass.* 496. *Walker v. Melcher* 14 *Mass.* 148. After a recommitment, two may return the report without alteration; but they are not competent to alter it. *May v. Haven* 9 *Mass.* 325. *Peterson v. Loring* 1 *Greenl.* 64. Now here, two of the referees acted on the subject of interest, which was excluded in the former report; and also adjudicated upon the whole matter; as is apparent from the very great difference between the two sums awarded; and this too, when the absent referee had not refused the office, but had only declined to call a meeting and attend on that particular day.

*Orr, Longfellow* and *Fessenden*, argued for the defendants in error. 1. The authority of the referees is to be found in the original submission, by which the report of any two of them was to be binding and final. The parties have a right to a hearing before all the referees; but when all have once heard them, the power to make an award is devolved on a majority. If it be not so, then one may always absent himself after the first hearing, and defeat the award. And if the majority are competent to act in the absence of the third referee at one time, they are equally so at all times after the cause is once heard by all. Their jurisdiction, once given, continues till the cause is determined by a final award; and enables them to do every act which could be done by the three. *Short v. Pratt* 6 *Mass.* 496. Of course they are competent to revise the whole subject matter. 2 *Barnes' Notes*, 53, 57. *Dalling v. Matchett, Willes* 215.

2. The authority thus given, it was not in the power of either party to revoke. The referees were amenable to the court alone; were liable to an attachment for contempt; and to a

*mandamus* if they refused to act. *Haskell v. Whitney* 12 *Mass.* 47.

3. There was no error in the recommitment of the report ; the court having that authority, by the common law of the State. And as neither party entered a dissent upon the record, which they might have done, if dissatisfied, it must now be taken to have been recommitted by consent, if any consent was necessary; both parties having been present at the time. *Whitney v. Cook* 5 *Mass.* 139. *Boardman v. England* 6 *Mass.* 70.

After this argument, which was heard at *May* term 1826, the cause was continued for advisement, and the opinion of the court, the chief justice dissenting, was delivered at *June* term 1827, in *Kennebec,* by

WESTON J. Under the first error assigned, it has been contended that the referees had no power to proceed to make a second report after the recommitment, because their authority had been revoked by the plaintiffs in error. It was resolved in *Vinyor's* case, cited in the argument, that an authority countermandable by the law, cannot in any way be made irrevocable. Hence, it was there decided that if one becomes bound to abide the award of an arbitrator agreed upon, and afterwards revokes the submission, such revocation is good, although the bond is forfeited. And this principle has been recognised in subsequent cases. But in *Milne v. Gratrix,* cited from 7 *East* 608, Lord *Ellenborough* says, after the submission is made a rule of court, the party cannot rescind it, without incurring a breach of that rule. It would seem therefore from this authority, that a submission once made a rule of court is no longer countermandable by the law ; the party attempting to countermand it being liable to an attachment for a contempt ; which is the coercive process by which rules of court are enforced in England. And in *Haskell v. Whitney* 12 *Mass.* 47, it was decided that where an action has been referred by a rule of court, neither party has a right, without the consent of the other, to rescind or discharge it.

The authority of the court to recommit generally, without consent of parties is controverted ; it being urged that their

power to recommit can only be exercised for the purpose of correcting mistakes in matters of form. In support of this position, cases have been referred to in the English books, where courts have refused to sustain alterations made in awards by arbitrators, after the time limited for the exercise of their authority had ceased, or after they had once executed the powers delegated to them.    Of this kind also is the case of *Woodbury v. Northey*. But all these were cases of submission to arbitrators out of court, in some of which they were expressly restricted as to time, and in others their power was held to be at an end, after it had been once exercised. But recommitments of reports made under a rule of court, or under a submission before a justice, in regard to which the common pleas has, by statute, the same power as it has over its own rules, have been uniformly made, both in this court and in the common pleas, whenever, in the opinion of the court, the purposes of justice required such a course.    Nor has this practice been confined to the amendment of mere matters of form, but has extended to the substantial merits of the matters in controversy, whenever a reexamination of the whole subject has been deemed expedient. And nothing is more common than an award of referees, after recommitment, presenting results differing materially from their first report.    Where the court, from any cause, not arising from the misconduct of the referees, deems it improper to accept the report first made, it is generally much more convenient to the parties to recommit it for revision, than to discharge the rule. The power of the courts to do this is fully recognized in the cases of *Whitney v. Cook* and *Boardman v. England*, cited by the counsel for the defendants in error.

One of the errors assigned is, that it does not appear for what reason the report was recommitted.    It is not usual, nor is it necessary, to spread upon the record the reasons which induce a recommitment.    Whether the report shall, or shall not, be thus disposed of, depends upon the sound discretion of the judge ; whose determination upon this point is conclusive.

From the assignment of errors, and from the record before us it appears that *Nathan Elden*, the chairman of the referees, did

not act with his colleagues after the recommitment; he having re-fused to notify a meeting, or to meet at the time and place by them appointed. And a majority of the court are constrained to determine that this error is well assigned ; and that the judgment must be reversed. The sum awarded against the plaintiffs in error, in the second report, signed by two of the referees, being nearly double the amount awarded against them in the first report, signed by them all, evinces that the subject matter was re-examined, and that it resulted in a great change of opinion, on the part of those who signed the second report. The authority of referees to adjudicate between the parties, can originate only from their assent. The assent of the plaintiffs in error to this submission, may have depended upon the confidence they reposed in the judgment and integrity of the chairman of the referees. Unless he was appointed, and consented, to act, they might have declined the reference altogether. To oblige them therefore to abide the award of the two other referees, made and concluded at a meet-ing at which he was not present, and without the benefit of his assistance and advice, even though he might refuse to act, which might happen without the fault of the plaintiffs in error, would be to subject them to the determination of a tribunal differently constituted from that to which they had submitted. It is true they had consented to be bound by the report of a major part of the referees; but that must be intended to mean upon a final dif-ference of opinion, after a hearing by all, and after availing them-selves of the aid, which each could afford, in the consideration and discussion of the merits. That the views and arguments of one may justly and fairly have an important influence upon the opinion and judgment of others, is a fact which will not be con-troverted. If therefore two have come to a certain result, without the assistance of the third, it by no means follows that they would have come to the same result, if they could have had the benefit of his advice. It would not probably have been con-tended that, upon a reference to three, the original award of two, the third not having been present at the hearing, could have been binding upon the parties. A majority of the court are unable to perceive any difference in principle between such an award and one made by two, in the absence and without the assistance of

the third, after a recommitment, substantially varying from the first award, to which all had assented.

After the referees had once undertaken the execution of the trust confided to them, if they, or any one of them, should refuse to re-examine the subject, the court might enforce obedience to their order of recommitment, by *mandamus* or attachment. It is believed however that no precedent can be found of a resort to such a process, in a case of this kind. It would without doubt be deemed a more eligible course to discharge the rule, and leave the parties to the ordinary modes of trial at law. In *Boardman v. England*, Parsons C. J. in stating the practice of the courts in regard to rules of reference, says, if either of the referees refuse to execute the trust, the rule is discharged. In *Short v. Pratt* 6 *Mass.* 496, it was decided that upon the recommitment of a report, it must appear that all the referees heard the parties ; although if they disagree, the award of two is binding. That was the case of a report made to the common pleas, upon a submission before a justice ; but as reports of that kind are by statute to be treated precisely like reports made under a rule of court, it is an authority directly in point.

There is nothing in the case of *May v. Haven* or of *Peterson v. Loring*, referred to in the argument, at variance with the authority last cited. The reports originally made in these cases, had been signed by all the referees. After this recommitment, two of them, in the absence of the third, in each case, made a report conforming to the first. As the same results had been assented to by all, they were deemed to have been substantially made by three, and not by the two only, who had last signed. *Peterson v. Loring* was decided upon the authority of *May v. Haven*, and in the opinion of the court in the former case, both are declared to be consistent with the case of *Short v. Pratt*. In *Walker v. Melcher*, the referees met and heard the parties on the thirtieth of *November*, which they set forth under that date ; on the same day one of them certified that he was present at the hearing, but gave no opinion as to the damages ; and on the seventh of *March* following, the other two referees made up and signed their report ; the third not being present. One of the errors assigned

was, that the assessment of damages was made on the seventh of
*March* ; and that it did not appear that the referee, who did not
subscribe, had any notice of the meeting on that day, or of their
assessment of damages.  Upon this point, the court  say that the
referee, who did not join in the report, appeared to have been
present at the hearing ; but  did not agree with his brethren, as
to the amount of the damages.  If he did not agree in the amount,
he must have known what it was.  And it is apparent, from the
opinion of the court, that  it  was  founded upon the assumption,
that every  thing  was virtually  and substantially  agreed  by the
two in *November* ;  the third dissenting as to the amount of dama-
ges ;  and that the result, to  which they had then arrived, was
put into  form and signed by the two in *March*.  The court  did
not  overrule this error ;  but denied  the fact  upon which it was
predicated.

MELLEN C. J.  After the most serious consideration of this
cause, in all its bearings, I have not been able to agree with  my
learned brothers  in the opinion  which has just been  delivered ;
and though I regret that an ultimate difference should exist, still
I must pursue that course which my  judgment and sense of duty
prescribe.  Though  my own opinion will  not affect the decision
of the court, yet, in justice to myself,  I deem it proper to  state
distinctly the reasons  and principles on which it is founded ; ob-
serving  at the same  time that I agree with the  other  members
of the court in their opinion, so far as it overrules several of the
errors assigned,  and objections urged by the plaintiffs' counsel.

I consider the law to be  well understood and settled, that
when *one* referee  refuses to accept his appointment, the *others*
have no authority to proceed.

When he has *accepted* and  entered on the duties of his ap-
pointment, he must be considered as *retaining* his authority, until
he shall refuse to proceed any further; and give  notice to *the*
*court* under whose commission he has been acting, or at least to
*both the parties* in the cause.

As nothing of this kind has been done in the case we are
examining, *Elden's* powers as a referee were continuing at the

time the last report was made ; and, of course, the powers of the *other* referees also.

There is then no objection to the report by reason of a determination of the authority of any of the referees.

Is it objectionable on any other ground ?

The power given to referees to *hear* and *try* a cause, is a *joint* power.—All agree in this.

The power given them to *decide* is *not a joint one* ; because the decision of a majority is legal and sufficient.

If, after a *joint hearing* of the parties and their *proofs*, in the *first* instance, and *before* a recommitment, *one* of the referees *absent himself immediately*, or *refuse to consult* with his brethren, or to give *any opinion*, then the *other two* have full power to decide the cause *upon the evidence* previously *produced*, and *heard* by *all*.

After *such* a hearing, each referee has an unquestionable right to *express* and *continue to hold* his own opinion ; and *neither* of the other two, while continuing in office, can by any act of his, defeat, impair or control this right.

So after a report has been *recommitted*, this right *continues*; and if no *further evidence* be offered, or *hearing of the parties had*, a majority has the *same* authority to decide the cause on its *original facts and merits*, as they had when the *first* report was made; because the order of recommitment does not *take away* any of the original powers of the referees ; but only *authorises* them to reexamine the cause upon the *former facts*, or upon *additional* facts also, as circumstances, or the wishes of the parties, may render proper or require.

If *no additional* evidence be offered, or hearing of the parties had by the referees, then the *only* power exercised by them under the order of recommitment, is that of *reviewing*, and, if thought proper, of *correcting* their former opinion and report.

In doing *this*, *each* referee *may* and *must* judge and decide *for himself*. The operations of the minds of the referees, *are not*, and *cannot* be *joint* ; they may *reason* and arrive at their *conclusion* separately, as well as together ; and when *any two* of them agree in their conclusions, they may, after due notice to the third referee to join them in making a report, *decide* the cause, *without* or *against* his opinion.

Cumberland v. North-Yarmouth.

Hence his *absence*, after due notice, cannot be of more importance than his *presence* and *express dissent* from the opinion of the majority ; and, most certainly, *that* cannot affect the validity of the report.

I am not able to discover any fallacy or unsoundness in either of the foregoing propositions, or incorrectness in the results, as I have stated them.

It is *not* denied that, upon these principles, the *majority* of the referees may, *after* a recommitment, report the *same sum*, which was originally reported ; such was the decision in *May v. Haven* 9 *Mass.* 325, and *Peterson v. Loring* 1 *Greenl.* 64; but it *is* denied by the plaintiffs in error that, in such circumstances, *two* of the referees can legally report a *larger* sum in *damages* than the sum named in the *first* report. It appears, in both the above mentioned cases, that the majority of the referees, in the absence of the third, made a report, however, by which, though they did not increase the *damages*, they allowed additional *costs*; but both reports,notwithstanding this increase, were sanctioned and accepted. It is not easy, at least for *me*, to perceive why *two* of the referees, in the circumstances mentioned, had not as good a right to increase the amount recovered, in the *form* of *damages*, as in the form of *costs* ; the *latter* are as much a part of the report as the *former*. In both cases new liabilities and *additional obligations* are created by the *second* report. It has been said, by way of reply to this suggestion, that costs are only a *consequence* or incident ; but, though in some cases they are, in case of a decision by *referees*, they are not so. The allowance and recovery of cost arising before them, depend on their reports. If they do not make such costs a part of their report, they cannot be taxed or recovered. In *principle*, then, there is no difference between an increase of *damages*, and an increase of *costs* only, in a report made by *two* referees, after a recommitment ; and I am unable to see why one should be made *in fact*.

The case of *Walker* in error *v. Melcher* 14 *Mass.* 148, seems to me to be worthy of consideration. By the printed report of it, and an inspection of the record in the clerk's office, it appears that *all* the referees met and fully heard the parties *November* 30,

1813, as they state in their report ; and then it is stated thus ; "and now on this seventh day of *March* 1814, report" &c. This report was signed by *two only* of the referees; but the *third* certified at the bottom of the report, under date of *November* 30, 1813, in these words ;—"I *William Hawes,* one of the referees within named, do not give any opinion as to the *damage ;* but say said *Melcher* 3d, has cause for action against said *Walker* for a libel." The natural implication from the whole is, that nothing was said, or at least, decided, on the day of the hearing. In *March* following, *two,* in the absence of the *third,* agreed and signed the report. In that case *two* of the referees decided, upon the evidence which *all* had heard, and decided in the absence of *Hawes.* In the case at bar two did *no more,* in the absence of *Elden.* They only corrected an error in their *former* opinion upon the evidence, and thereby increased the damages ; and in *Walker v. Melcher,* the two formed an *original* opinion upon the evidence as to the amount of damages. What sound distinction is there, in principle, between the two cases ? I do not perceive any.

The supposed error which is assigned, viz. that the last meeting of the referees was not notified by the chairman, cannot be a circumstance of any kind of importance. If referees meet by a mutual understanding, without formal notice from any one, it is sufficient ; the object of the notice is to convene the referees. The chairman, as he is called, possesses no more or greater authorities and powers than either of his associates. It is merely a matter of courtesy that he should, as he generally does, notify the other referees, and the parties, of the time and place of hearing ; but, in legal contemplation, one of them may as well do this, as the other ; or else there might be a failure of justice. Surely, if the chairman refuse to notify a meeting, he cannot thereby arrest and frustrate all proceedings under the submission ; this would be extending courtesy to an unreasonable and dangerous length. In the present case, for some unexplained reasons, best known to Mr. *Elden* himself, he declined to notify a new meeting, pursuant to the order of recommitment, though he was particularly requested so to do; but by the record it appears that such meeting *was* notified ; and that all the referees and

both the parties had notice, and were requested to attend at the time and place appointed; and it also appears that no new evidence was offered of any kind, or any *hearing of the parties* or *their counsel* had ; and that in the absence of *Elden,* the *other* referees agreed upon and signed the report in question ; and that it is predicated on the *original facts* and *merits,* and on them *only.* They had no other sources of information, or *basis* of calculation and judgment, than *all* had on the former hearing. All that was done by the two was, to review and revise the evidence and first report, and to exercise the unquestioned right of judging for themselves, and drawing their own conclusions upon such review and revision. But it is said that they had no authority to do this, in the absence of *Elden,* because, had he been present, his arguments might have changed their opinion, and convinced them that the damages ought not to have been increased. Why then did he not attend as requested, and give his brethren the benefit of his arguments and opinion ? His absence is not chargeable to them, nor to the town of *North Yarmouth* ; and why should his *absence* under such circumstances, and his consequent *silence* upon the subject of the submission, affect the validity of the report, any more than his *presence* and *total silence* would have done ? In the *latter* case, surely, the report would be liable to no objection. For one, I do not feel at liberty to establish *distinctions,* where I can discern no *difference.*

In my opinion the report was properly accepted, and judgment thereon properly rendered ; and, of course, that it ought to be affirmed.                                        *Judgment reversed.*